AO 472 (Rev. 1/25) Order of Detention Pending Trial

# UNITED STATES DISTRICT COURT
### for the

Eastern District of Kentucky

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. 6:26-CR-100-SCM |
| Andrew D. Lewis | ) |
| *Defendant* | ) |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

☑ **A.** Motion of the Government for a detention hearing pursuant to 18 U.S.C. § 3142(f)(1) because the defendant is charged with:

☐ **(1)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in l8 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**

☐ **(2)** an offense for which the maximum sentence is life imprisonment or death; **or**

☐ **(3)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801–904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951–971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501–70508); **or**

☐ **(4)** any felony if such person has been convicted of two or more offenses described in Subparagraphs (1) through (3) of this paragraph or two or more of such offenses if a circumstance giving rise to federal jurisdiction had existed, or a combination thereof; **or**

☑ **(5)** any felony that is not otherwise a crime of violence but involves **(a)** a minor victim; **(b)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921); **(c)** any other dangerous weapon; or **(d)** a failure to register under 18 U.S.C. § 2250;

**OR**

☐ **B.** Motion of the Government or the Court's own motion for a detention hearing pursuant to 18 U.S.C. § 3142(f)(2) because the case involves:

☐ **(1)** a serious risk that the defendant will flee if released; **or**

☐ **(2)** a serious risk that the defendant will obstruct or attempt to obstruct justice or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate a prospective witness or juror if released.

The Court found that the Government established one or more of the factors above, held a detention hearing, and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

AO 472 (Rev. 1/25) Order of Detention Pending Trial

## Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

  ☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):

    ☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**

    ☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**

    ☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801–904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951–971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501–70508); **or**

    ☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to federal jurisdiction had existed, or a combination of such offenses; **or**

    ☐ **(e)** any felony that is not otherwise a crime of violence that involves:
    **(i)** a minor victim; **(ii)** the possession or use of a firearm or destructive device (as defined in 18 U.S.C. § 921); **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**

  ☐ **(2)** the defendant has been convicted of a federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to federal jurisdiction had existed; **and**

  ☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a federal, State, or local offense; **and**

  ☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

☑ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

  ☐ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801–904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951–971), or Chapter 705 of Title 46 (46 U.S.C. §§ 70501–70508);

  ☐ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

  ☐ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

  ☐ **(4)** an offense under Chapter 77 of Title 18 (18 U.S.C. §§ 1581–1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

  ☑ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

☑ **C. Application of Any Presumption Established Above**

  ☐ The defendant has not rebutted the presumption.
  **OR**
  ☑ The defendant has rebutted the presumption.

AO 472 (Rev. 1/25) Order of Detention Pending Trial

**Part III - Analysis and Statement of the Reasons for Detention**

After considering any applicable presumption, the nature and circumstances of the defendant's alleged conduct, the defendant's history and characteristics, the other factors set forth in 18 U.S.C. § 3142(g), the information presented at the detention hearing, and the available conditions of release under 18 U.S.C. § 3142(c), the Court concludes that the defendant must be detained pending trial because the Government has proven:

☑ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

☐ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

The reasons for detention include the following checked items (*After this list, add any additional items or explanations as needed to comply with the requirement for a written statement of reasons under 18 U.S.C. § 3142(i)*.):

☐ The offense charged is a crime of violence, a violation of § 1591, a federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device.
☐ Weight of evidence against the defendant is strong.
☐ Subject to lengthy period of incarceration if convicted.
☐ Lack of significant family or other ties to the community.
☐ Significant family or other ties outside the United States.
☐ Lack of legal status in the United States.
☐ Subject to removal or deportation after serving any period of incarceration.
☐ Lack of stable residence.
☐ Lack of stable employment.
☐ Lack of financially responsible sureties.
☐ Prior attempt(s) to evade law enforcement.
☐ Use of alias(es) or false documents.
☐ History of alcohol or substance abuse.
☐ Prior criminal history.
☐ History of violence or use of weapons.
☐ Prior violations of probation, parole, or supervised release.
☐ Prior failure to appear in court as ordered.
☐ On probation, parole, and/or release pending trial, sentence appeal, or completion of the sentence at the time of the alleged offense.
☐ Participation in criminal activity while on probation, parole, or supervision.
☐ The defendant's release poses serious danger to any person or the community.

AO 472 (Rev. 1/25) Order of Detention Pending Trial

---

OTHER REASONS OR FURTHER EXPLANATION:

See attached Findings and Statement of Reasons for Detention.

**Part IV - Directions Regarding Detention**

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date:  August 6, 2026

U.S. Magistrate Judge

## <u>Findings and Statement of Reasons for Detention as to Andrew D. Lewis</u>
### Case No. 6:26-CR-100-SCM-HAI

Detention is required because the proposed release scenario would result in Defendant being unsupervised on weekdays with access to devices that could be used for harming minors. The defense proposed that the Court could order all internet-capable devices removed from the home, but there is no testimony that the family of six, including three schoolchildren, a schoolteacher also in a master's program, and an elderly mother/grandmother needing care, could function effectively without internet access and the Court does not believe such a scenario is a realistic possibility. So, Defendant would be unsupervised and have access to the internet. If the current charge were the only evidence presented, the Court might be able to trust him in such a scenario. But, because he apparently wiped his phone when confronted with reports of inappropriate behavior and, during recorded calls with his wife while in custody, Defendant asked her to contact various people involved in the investigation and elected officials, including the detective that interviewed him, to "call in some favors," the Court is convinced that Defendant cannot be trusted to comply with conditions. Finally, during the testimony of Special Agent McKenzie, the Court observed Defendant snickering, sneering, and sometimes even seeming to laugh, indicating an overall lack of appreciation for the seriousness of the charge, proceedings, and Court's authority.

As conceded by the Government, the presumption was fully rebutted by the defense's proof. First, Defendant's wife, Lauren Lewis, testified that she is a full-time special education teacher in high school, that school will be in session beginning August 5, and that she is required to be in school every day from 8:15 to 3:00. Defendant has resided with her, his mother, and their three children (ages 5, 10, and 15), and can return to the home. All firearms have been removed to her brother's house some 15 minutes away. They have ordered the installation of landline service. She described Defendant as a caring and valued member of the community who is missed by the family and needed at home, particularly to care for his elderly mother. She stated she would not hesitate to report a violation and would have no concerns with him residing in the home. On cross, she indicated there are various electronic devices in the home, including Defendant's desktop computer, each child has a tablet, she has a laptop, and Defendant has obtained another cell phone with internet access since providing his to law enforcement. She stated his "Facebook," that she has access to and has reviewed in the past, has been "deleted" (though it was not clear if that meant his account or just the application) and he told her in the past he had a Snapchat account, but she never reviewed it or looked at it. She did not know he was messaging students and does not know if he has other social media accounts. She does not regularly monitor his communications. When arrested, he went peacefully and complied with instructions.

Next, Jennifer Adkins, a friend of Defendant's who has known him since they were young, testified that he is "wonderfully known" in the community as a protector and encourager, who has helped her in the past by protecting her daughter when bullied and assisting after Adkins's husband died. She would report any violation and help monitor Defendant.

The burden of production to rebut the statutory presumption is "relatively light." *United States v. Stone*, 608 F. 3d 939, 947 (6th Cir. 2010). Even when rebutted, it does not disappear, but it retains evidentiary weight because of "Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id*. at 945.

1

The Government conceded full rebuttal and indicated it only seeks detention based upon danger risks.

The single indicted charge is attempted online enticement to commit first-degree sex abuse of a minor under Kentucky law in violation of 18 U.S.C. § 2422(b).  A screenshot recovered from Defendant's phone shows a message to a girl in middle school in which Defendant wrote "And your boobs that I wanna bury my face in and go brrrrrrrr" followed by three laughing emojis.  FBI Special Agent McKenzie was called to testify about the investigation and provide context extending beyond this sole message, which forms the basis of the indicted charge.  She stated if the act described were committed it would be a sex offense under Kentucky law.

SA McKenzie testified about events leading up to the discovery of the screenshot described above.  Defendant was employed as a bus driver in Floyd County.  On March 27, 2026, two girls in middle school on his morning (to school) route reported inappropriate touching by Defendant that initiated the investigation.  The first (Girl1) reported prior lingering hugs and inappropriate touches to her buttocks by Defendant, while the second reported a specific incident occurring on that day.  The events described by the second girl (Girl2) were recorded by three cameras on the bus at different angles.  Defendant, driving the bus that day, stopped to pick up Girl2 who hugged Defendant when she boarded and then sat down.  Then, after driving the bus for a while, Defendant reportedly got up, approached Girl2, leaned over, whispered in her ear that "she was hot," and touched her buttocks.  The video is dark and some portions of the interaction are not actually visible, including any touching of Girl2's buttocks, but in general it is consistent with the events described by SA McKenzie.  On the video, someone says "no" fairly loudly, and another passenger stood up at around the same time.  Defendant returned to keep driving, and Girl2 moved to sit next to that passenger.  As the bus approached the stop to pick up Girl1 at her home, Girl2 moved to the front of the bus and, when the door opened, Girl2 exited the bus very quickly.  SA McKenzie testified that, while sitting next to the passenger, Girl2 tried to call her father and brother, but could not reach them, and then reached Girl1 who told Girl2 to exit at the next stop (at Girl1's house).  SA McKenzie testified Defendant stopped the bus for about seven minutes outside Girl1's home and she said he messaged her over Facebook stating "get your butts on the bus we are going to be late."  However, neither girl got back on the bus and Defendant eventually resumed driving and finished his route, which took more than an hour.

Per SA McKenzie, Defendant was then contacted by someone unknown to law enforcement and told to report to the bus garage because of a report that someone had jumped off the bus.  Both Girl1 and Girl2 had reported to police that D had used social media to talk to them in the past, including discussion of inappropriate topics and a sexual overture about having sex with one of their mothers.  When Defendant reported to the bus garage, he was interviewed by school employees and allowed to keep his cell phone at the time.  When that phone was eventually obtained by law enforcement, it had been wiped and a forensic search revealed a Google search for how to delete a phone's content.  When interviewed, Defendant provided a statement indicating that both girls came from troubled homes and would conspire against him, though he admitted he hugged Girl2 and that their cheeks may have touched.  He also said he had online communications with children that would get him into trouble, along the lines of "if I messed up, that's where it would be."

2

The aforementioned screenshot was found in Defendant's phone and depicted communication between him and a third girl in middle school.  Law enforcement has not determined if the act described in the screenshot was completed.

On cross, SA McKenzie acknowledged the videos show contact, but what can be seen is limited by the position of the seats and that the forensic review yielded messages from minors involving things like doing students favors.  She did not recall specific messages from Defendant proposing any meet ups, although the review is limited and ongoing.  She indicated unsupervised contact with minors on the bus is natural.  He did not hug anyone else on the bus that morning.

SA Mckenzie testified that Girl1 and Girl2 provided consistent versions of the events.

By proffer, counsel for the Government described the jail calls discussed above.  He was clear that, at this point, they did not rise to the level of chargeable obstruction of justice, but that there was no discussion between Defendant and his wife about involving defense counsel in those calls to others about the case.  Those others included a police detective that interviewed Defendant, other law enforcement officials perhaps including a sheriff, and one elected state senator.  Per the proffer, the wife agreed to make the calls.  In general, they were discussing getting help to avoid destroying their family.  Counsel had reviewed approximately ten of ninety recorded calls at the time of the hearing.

The section 3142(g) factors are mixed.  Congress has specifically indicated the nature of the charge is pro-detention under section 3142(g)(1) because of the involvement of a minor victim.  Section 3142(g)(2) is pro-detention as well.  The screenshot is memorialized and SA McKenzie testified it contains a message sent by Defendant.  The defense did not argue, in any way, that if completed, the act would not constitute sex abuse in the first degree under Kentucky law.  Of course, per section 3142(f), Defendant is presumed innocent and nothing at this stage affects that presumption, but, on this record, the evidence supports the charge and indicates danger risks because of the attempted sexual contact with a minor.  There is no proof that the act occurred, but the attempt to do so, by itself, signifies future danger risks that Congress has classified as a Class A felony, which is the highest classification in the federal scheme.

As mentioned above, although rebutted, the presumption retains weight in the analysis.

The section 3142(g)(3) factors are mixed.  Defendant's only reported interaction with the criminal justice system is a DUI conviction from 2004, when he was eighteen years old.  In truth, the passage of more than twenty years since that conviction favors release.  Defendant reported minimal substance abuse history, including marijuana use as a teen, but none as an adult, and escalating alcohol consumption after his father died in 2021, but said he quit drinking approximately five months ago.  Per the bond report, he is no longer employed as a bus driver. The defense witnesses described a caring member of the community.

Section 3142(g)(4) favors detention.  Defendant is no longer working as a bus driver, so he is removed from the position of unsupervised access and authority over the minor bus riders.  But

3

the charged offense occurred outside that scenario through electronic messaging that pervades society and occurs in private. It takes very little time to use electronic messaging in the harmful way reflected in the online enticement charge. And the harm from such conduct is often devastating, enduring, and inflicted upon some of the most vulnerable members of society:

> The purpose of § 2422(b) was to protect minors from sexual exploitation by online predators. The House Conference Report of the Telecommunications Act of 1996, which included § 2422(b), notes that "the Senate Judiciary Committee held a hearing on online indecency, obscenity, and child endangerment ... this hearing supports the need for Congress to take effective action to protect children and families from online harm." H.R.Rep. No. 104–458, at 193 (1996), 1996 U.S.C.C.A.N. 10, 206 (Conf.Rep.). The Committee Report on the Child Protection and Sexual Predator Punishment Act of 1998, which increased the penalty for violation of § 2422 (b), emphasizes that the bill was "a comprehensive response to the horrifying menace of sex crimes against children, particularly assaults facilitated by computer ... [that seeks to] provid[e] law enforcement with the tools it needs to investigate and bring to justice those individuals who prey on our nation's children." H.R.Rep. No. 105–557, at 10 (1998), 1998 U.S.C.C.A.N. 678, 678. As a sister circuit concluded, "[t]he primary evil that Congress meant to avert by enacting § 2422(b) was the psychological sexualization of children." *United States v. Fugit,* 703 F.3d 248, 255 (4th Cir.2012), *cert. denied,* ⸺ U.S. ⸺, 134 S.Ct. 999, 187 L.Ed.2d 850 (2014).

*United States v. Hite*, 769 F.3d 1154, 1163 (D.C. Cir. 2014).

The defense argued that the Court could simply order the removal of all internet-capable devices from the home. But there was no testimony supporting this concept and the Court does not believe it is a realistic possibility. Defendant's wife described a busy and full home. The Court rejects the notion that, at the beginning of a school year, it could simply take away all internet-capable devices from a full-time teacher and three students without creating chaos and severe disruption. Even if such a condition were workable, the combination of evidence that Defendant wiped his phone, the ease with which additional devices could be obtained and utilized, and the wife's inability to effectively monitor Defendant's behavior given her demanding schedule, convince the Court that such a condition would not reasonably assure community safety. And the Court cannot ignore the proffer that Defendant and his wife discussed "calling in favors" to law enforcement and even some elected officials to help with the charge in this case. Plus, as the Court observed, Defendant was snickering and dismissive during SA McKenzie's testimony, which indicates a troubling attitude towards the Court and its processes. For all these reasons, sufficient compliance cannot be expected and detention is required. *See United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008).

4